DAVID L. ANDERSON (CABN 149604)
United States Attorney

HALLIE HOFFMAN (CABN 210020)
Chief, Criminal Division

DAVID J. WARD (CABN 239504)
SCOTT D. JOINER (CABN 223313)
Assistant United States Attorneys

    450 Golden Gate Avenue, Box 36055
    San Francisco, California 94102-3495
    Telephone: (415) 436-6934
    FAX: (415) 436-7234
    david.ward@usdoj.gov
    scott.joiner@usdoj.gov

Attorneys for United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | NO. 20 CR-0354 WHO |
| Plaintiff, | **UNITED STATES' SENTENCING MEMORANDUM** |
| v. | |
| FLORENCE KONG, | |
| Defendant. | |

Defendant Florence Kong is a multi-millionaire owner of a group of construction and real estate businesses in the San Francisco Bay Area. She engaged in knowing and blatant corruption in order to line her pockets and unfairly benefit her businesses. In doing so, she coopted and poisoned the trust that the people of San Francisco place in their public officials. When confronted with her corruption, she brazenly and repeatedly lied to agents of the Federal Bureau of Investigation. The United States respectfully submits this Sentencing Memorandum recommending that the Court sentence defendant Kong to 18 months imprisonment, followed by three years of supervised release, and a $250,000 fine.

# BACKGROUND

**I.   Offense Conduct**

   a. **Kong Bribes Mohammed Nuru, then-Director of SF Department of Public Works**

This case is part of a large-scale federal investigation targeting public corruption in the City of San Francisco.[1]  Defendant Kong was a successful business-owner and CEO, running several construction-related companies in the San Francisco Bay Area that sought contracts and business from local governments, including from the City of San Francisco. *PSR ¶ 6.* Among those companies was SFR Recovery Inc., a business Kong founded and ran to recycle and dispose of heavy construction waste.  SFR Recovery sought and obtained contracts with the City of San Francisco. But rather than compete honestly for this work, Kong resorted to bribery.

SFR Recovery was in business to recycle and dispose of concrete and other debris generated during public works projects. Among its target clients was the City of San Francisco's Department of Public Works (DPW), which generated significant debris when its crews did repair and construction work on San Francisco's streets and sidewalks. Kong sought to win contracts with DPW by influencing, and eventually corrupting, its then-Director, Mohammed Nuru. *Dkt. 17 (Information).* Kong knew that Nuru, as the director of DPW, had great influence over that agency's contracts, permits, and construction projects. *Dkt. 25 ( Plea Agreement).*

According to the evidence developed in this case, in 2018, Kong began pressuring Nuru to award SFR Recovery a permit to accept work from DPW. *PSR ¶ 9.* Once the permit was awarded, Kong repeatedly pressed Nuru to increase the volume of business that SFR Recovery was awarded from DPW. *Id.* For example, in calls on August 17, 2018, and on December 6, 2018 that were recorded by the FBI, Kong pressed Nuru for help increasing the amount of construction debris sent by DPW to SFR Recovery. *PSR ¶ 13; Dkt. 1 (Complaint).* In the December 6 call, Kong repeatedly pressed Nuru to increase the business DPW did with her company, stating at one point, "now, uh, we really need, uh,

---

[1] *See United States v. Mohammed Nuru*, CR 20-mj-70028 MAG, CR 20-mj-70076 MAG; *United States v. Walter Wong*, CR 20-00257 WHO; *United States v. Harlan Kelly*, CR 20-mj-71739 MAG; *United States v. Nick Bovis*, CR 20-00204 WHO; *United States v. Balmore Hernandez*, CR 20-00353 WHO; *United States v. Alan Varela & William Gilmartin*, CR 20-mj-71327 MAG; *United States v. Paul Giusti*, CR 20-mj-71664-MAG.

U.S. SENTENCING MEMORANDUM        2
20 CR-0354 WHO

your help in uh, increasing our revenue." *Id.* On March 20, 2019, Kong again spoke to Nuru by phone, complaining that she was not getting enough business from DPW for SFR Recovery. *Id.* Nuru replied that he had talked to another DPW employee about giving SFR Recovery more business. *Id.* Emails obtained by the FBI also show Kong pressing Nuru to direct business to SFR Recovery, as well as her pressuring him to use his influence to help direct additional business to other companies Kong owned and controlled. *PSR ¶ 9.*

While Kong was pressuring Nuru for business, she was showering him with gifts and other benefits, including expensive meals and envelopes of cash to his children. *PSR ¶ 14.* Kong's largesse culminated in the bribery for which she pled guilty, when, in December 2019, she purchased and gave to Mohammed Nuru a 40 mm gold Rolex watch worth approximately $36,550. *PSR ¶ 14.* When FBI agents searched Nuru's home in San Francisco, they recovered a gold Rolex watch. Its serial number matched that on a receipt obtained from Kong during the investigation. In her plea agreement, Kong admitted that she "provided the Rolex watch to Nuru corruptly, knowing and intending it to be an illegal gift to him in return for his official actions on my behalf." Dkt. 25 ( Plea Agreement).



*Dkt. 1 (Complaint) – Rolex Seized From Nuru Home on 1/27/2020.*

**b. Kong Repeatedly Lies to the FBI About Her Corrupt Relationship With Nuru**

In January 2020 Mohammed Nuru was arrested and charged with honest services wire fraud and lying to investigators. *See United States v. Mohammed Nuru*, CR 20-mj-70028 MAG, CR 20-mj-70076 MAG. The arrest and charges were widely publicized. Three months later, on March 20, 2020 special

agents of the FBI interviewed Kong at her home in Hillsborough, CA. *PSR ¶ 7.* To conceal her conduct and to evade culpability, Kong repeatedly lied to and misled the FBI. *PSR ¶¶ 9-15.* Kong told the agents that she and Nuru were friends, but insisted that they did not discuss business. *PSR ¶ 8.* This was a lie. She told them Nuru did not extend a bidding deadline for her on another contract she was seeking for one of her companies. *Id.* This was a lie. She told them that she never discussed with Nuru the construction debris contract her company SFR Recovery had with DPW, and that she never gave Nuru money. *Id.* These were lies. The agents, who by that time had substantial evidence that Kong was bribing Nuru, including emails and recorded phone calls, warned Kong that providing false statements to the FBI was a crime. *Id.* Kong stuck with her falsehoods. *Id.*

On June 1, 2020, Kong was charged by Complaint with one count of False Statements in violation of 18 U.S.C. § 1001(a)(2). *Dkt. 1.* On October 8, 2020, Kong pled guilty to a two-count information charging her with one count of Bribery, in violation of 18 U.S.C. § 666(a)(1), and one count of False Statements in violation of § 18 U.S.C. 1001(a)(2).

## DISCUSSION

### I. The Defendant's Sentencing Guidelines Calculation

The government agrees with Probation's calculation of the Guidelines. Specifically, the government and U.S. Probation agree that the Guidelines for defendant Kong are as follows:

    a.    Base Offense Level, U.S.S.G. §2C1.1(a)(2):    12

    b.    Specific offense characteristics under U.S.S.G. Ch. 2:

        The value of the payments or benefits received was between $15,000 and $40,000, U.S.S.G §2C1.1(b)(2); U.S.S.G. §2B1.1(b)(1)(C):    +4

        The offense involved a public official in a high-level or sensitive decision-making position. U.S.S.G. § 2C1.1(b)(3):    +4

    c.    Acceptance of Responsibility, U.S.S.G. § 3E1.1(a), (b):    - 3

    d.    Adjusted Offense Level:    17

The government's understanding, based on the criminal history information in the Presentence Report, is that Kong is a Criminal History Category I. *PSR ¶ 44.* As a result, her Sentencing Guidelines range is 24-30 months. *PSR ¶ 82.*

**II.    Sentencing Recommendation**

    **a.    Legal Standard**

The U.S. Sentencing Guidelines serve as "the starting point and initial benchmark" of any sentencing process, and are to be kept in mind throughout the process. *See United States v. Carty*, 520 F.3d 984, 991 (9th Cir. 2008); *see also United States v. Kimbrough*, 522 U.S. 85, 108 (2007). The overarching goal of sentencing, as set forth by Congress, is for the Court is to "impose a sentence sufficient, but not greater than necessary." *Carty*, 520 F.3d at 991. In accomplishing that goal, the Court should consider the factors set forth under 18 U.S.C. § 3553(a), to include:

    (1)    the nature and circumstances of the offense and the history and characteristics of the defendant;

    (2)    the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

    (3)    the need for the sentence imposed to afford adequate deterrence to criminal conduct;

    (4)    the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct.

    **b.    The Government's Recommended Sentence Vindicates the 18 U.S.C. §3553(a) Sentencing Factors**

        **1.    Bribery Subverts and Erodes the Integrity of the Governing Process**

Kong's offenses are serious and warrant a significant custodial sentence. Few cases implicate the second sentencing factor above – "the need … to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense" – in the way that public corruption offenses do. Bribery cuts at the heart of open, democratic governance and undermines the rule of law. By its nature, it places the greed and avarice of the few above the duty owed to the public by its elected officials and those who seek to draw from the public purse. Corrupt public officials and their enablers line their pockets at the expense of the taxpayers and the citizens, who expect that their public officials will act in good faith in the best public interest, and that those who seek taxpayer dollars will do so honestly. Bribery erodes this trust. By its nature, it destroys the foundation of an open, accountable government.

As the Supreme Court recognized, bribery is the "perversion or destruction of integrity in the discharge of public duties." *Nixon v. Shrink Missouri Government*, 120 S. Ct. 897, 923 (J. Thomas, dissent), quoting 3 Oxford English Dictionary 974 (1989). As Chief Justice Rehnquist wrote in *National Conservative Political Action Committee*: "corruption is the subversion of the political process. Elected officials are influenced to act contrary to their obligations of office by the prospect of financial gain to themselves or infusions of money into their campaigns." 470 U.S. 485, 497 (1985).

The federal bribery statutes, including 18 U.S.C. § 666, were enacted specifically to combat this corruption and threat to the public trust. As the Second Circuit held in *United States v. Rooney*, the bribery statute was enacted by Congress specifically "to augment the ability of the United States to vindicate significant acts of theft, fraud, and bribery involving Federal monies that are disbursed to private organizations or State and local governments pursuant to a Federal program." 37 F.3d 847, 851 (2nd Cir. 1994) ("Congress intended the terms of the statute to be construed broadly, consistent with the purpose of this section ,to protect the integrity of the vast sums of money distributed through Federal programs from theft, fraud, and undue influence by bribery.") (internal quotes omitted).[2]

### 2. Defendant Kong Abused her Position of Power and Wealth

As described in detail in the PSR, Kong rose from a childhood of poverty and abuse to a position of great wealth, power, and influence in the City of San Francisco. Kong built and has led multiple successful businesses. *PSR ¶ 6, 73-76.* She has assumed leadership roles in various civic and business organizations, including the Asian American Contractors Association, Build Bayview, and the San Francisco Chinese Club. *PSR ¶ 60.* She was appointed to the San Francisco Mayor's Construction Workforce Advisory Committee. *PSR ¶ 61.*

Kong profited greatly from her businesses, including the money she obtained from her work with the City of San Francisco. She reported $1.3 million in adjusted gross income in 2019 and $3.6 million in adjusted gross income in 2018. *PSR ¶ 78.* She earned hundreds of thousands more in prior years. *Id.*

---

[2] In this case, Kong and Nuru corrupted the process of public contracting with the San Francisco Department of Public Works, an agency of local government that received federal assistance in excess of $10,000 during the period of Kong's offense. *Dkt. 17 (Information).*

Kong's assets include five properties in San Francisco, worth in total $15 million. *Id.* She has multiple checking, savings and money market accounts with total a balance of over $300,000, and she owns securities worth an additional $281,000. *Id.* She reported owning $100,000 in jewelry. *PSR ¶ 78.* In total, Kong has a net worth of $9.8 million.

With Kong's wealth, prestige, and power comes responsibility. First and foremost is her legal obligation to conduct her business affairs honestly. In this, Kong has failed. In her pursuit of dollars for her companies and herself, Kong knowingly and corruptly bribed one of San Francisco's highest-ranking public officials to act in a way that would unfairly and illegally benefit her company over competitors.

This criminality comes at a steep cost. The citizens and taxpayers of San Francisco, along with the U.S. taxpayers that provided the funds for federal assistance to the city, were deprived of the benefits of a competitive bidding and contract award process, and the chance to have public services performed by the most-qualified companies at the best price. An open and competitive contract award process and the fair and impartial allocation of public funds ensures that public entities get the best service or product at the lowest cost. Bribery corrupts this process, and results in excess profits pocketed by the wrongdoers at the expense of the taxpayers and the citizenry. Kong and Nuru's corruption undercuts faith in public entities and sows distrust in government and public service.

### 3. Nuru Was a High-Level Public Official, Warranting Increased Punishment

Kong's plea agreement includes a four-point increase in her recommended Guidelines sentence to reflect the fact that the individual she bribed was a high-level public official. *U.S.S.G. § 2C1.1(b)(3).* This enhancement is warranted because it reflects the increased severity of her conduct. Mohammed Nuru was one of the highest-ranking public officials in the City of San Francisco, appointed by and reporting directly to the Mayor. As Kong admitted in her plea agreement, "I believed Nuru to be one of the most powerful public officials in the City, and I believed that he wielded tremendous power and influence over City business, permitting, and other City government approvals." *Dkt. 25 (Plea Agreement).* The Ninth Circuit and others have upheld this enhancement for defendants involved in the corruption of a high-level public official, noting that the harm from bribery and corruption of high-level

officials is a distinct and additional harm from an individual breach of trust. *United States v. Santos*, 501 Fed. Appx. 630, 634 (9th Cir. 2012) ("the distinct harm at which § 2C1.1(b)(3) is aimed is the corruption of high-level public officials as distinct from an individual official's breach of the public trust.").

All of these factors support a significant custodial sentence. Indeed, absent Kong's pre-indictment acceptance of responsibility and cooperation with the investigation, her felony offenses would warrant far more than the 18-month sentence now being sought by the government. But as noted below, the government's recommendation is tempered by the recognition that her prompt acceptance deserves consideration, and that her sentence will serve as a bellwether for a number of current and future defendants in related cases who are involved in the ongoing investigation of corruption at San Francisco City Hall.

### 4. Kong Deserves a Guidelines Variance For Pleading Guilty Promptly

The government therefore recommends that the Court sentence defendant Kong to 18 months of imprisonment, below the 24-30 month recommended sentence reflected in the U.S.S.G. sentencing calculation above. As noted above, this downward variance is appropriate because of Kong's early decision to plead guilty, waive indictment, and accept responsibility soon after being charged. Similarly situated defendants, however, who do not promptly accept responsibility, are entitled to no such consideration.

Kong was charged by Complaint on June 1, 2020. *Dkt. 1.* She was arrested and made her initial appearance before the Magistrate Judge on June 8, 2020. *Dkt. 4.* Just over three months later, on September 16, 2020, the parties reached a plea agreement and an Information was filed charging Kong with bribery and false statements. *Dkt. 17.* Kong waived Indictment and pled guilty before this Court on October 8, 2020. *Dkt. 26.* Subsequent to her decision to plead guilty, Kong was interviewed by the FBI and the U.S. Attorney's Office, and she has admitted to her conduct and that of Mohammed Nuru, and has voluntarily provided documents and other leads to the government.[3]

---

[3] Although the information provided was useful, the government did not believe that a cooperation plea agreement was appropriate based on Ms. Kong's previous deceptions, the overall posture of the ongoing investigation, and the evidence already gathered.

Section 3553(a) also identifies the need for the sentence imposed to afford adequate deterrence, as well as avoid sentencing disparities between similarly situated defendants. Because Defendant Kong is the first to be sentenced in this large-scale public corruption investigation, the Court has a unique opportunity to craft a sentence that deters future criminal conduct and incentivizes acceptance of responsibility for a number of defendants and subjects within the scope of the ongoing investigation. Ms. Kong's sentence will undoubtedly be cited back to the Court in future sentencing proceedings.

Accordingly, the government respectfully recommends that the Court sentence Ms. Kong to 18 months in federal prison. This is a just and significant sentence that recognizes the seriousness of her offenses. It sends a clear message that such conduct will not be tolerated. But it is also a much lighter sentence than the one recommended by the Sentencing Guidelines, one that is calibrated to take into account not only Ms. Kong's personal circumstances, but also reward her prompt acceptance of responsibility and cooperation. In short, it will protect the public through general and specific deterrence, but also signal to future defendants that they should likewise accept responsibility sooner rather than later.

## CONCLUSION

For the foregoing reasons, the government recommends that the Court sentence defendant Kong to 18 months' imprisonment to be followed by three years of Supervised Release, a $250,000 fine, and a $100 special assessment.

DATED: February 4, 2021                                         Respectfully submitted,


                                                                DAVID L. ANDERSON
                                                                United States Attorney


                                                                */s/ David J. Ward*
                                                                DAVID J. WARD
                                                                Assistant United States Attorney